# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELIZABETH CATES, Individually, and on Behalf of Others Similarly Situated,  )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>INTEGRIS HEALTH, INC., an Oklahoma corporation,  )<br>)<br>Defendant.  ) | Case No. CIV-12-0763-F<br><br>(District Court of Oklahoma County Case No. CJ-2012-201) |

## ORDER

Plaintiff Elizabeth Cates's renewed motion for remand is before the court. Doc. no. 68 (plaintiff's Notice of Decision Related to Stay, construed by the court as a motion to remand, see order, doc. no. 69). The motion has been fully briefed through the sur-sur-reply stage. *See*, doc. no. 70 (defendant's response brief), doc. no. 72 (plaintiff's reply brief), doc. no. 75 (defendant's sur-reply brief), and doc. no. 76 (plaintiff's sur-sur-reply brief).

### I. Background

On November 7, 2012, Judge Joe Heaton denied an earlier motion to remand filed by Cates in this action. Doc. no. 29. The issue before Judge Heaton was whether plaintiff's claims, all of which purport to be alleged as state law claims, were completely preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001 *et seq*. Judge Heaton ruled that plaintiff's claims were completely preempted, creating subject matter jurisdiction in federal court. Doc. no. 29, p. 8. Accordingly, he denied plaintiff's motion to remand. *Id.*

After Judge Heaton recused (on the basis of matters which had not yet occurred at the time he denied remand), this action was reassigned to the undersigned. There were additional proceedings before the undersigned. Eventually, plaintiff moved for a stay, arguing that the Tenth Circuit's then-upcoming decision in Salzer v. SSM Health Care of Oklahoma, Inc., Case No. 13-6099 on appeal (Case No. CIV-11-1093-C in the district court), would establish Tenth Circuit precedent on the jurisdictional issue which Judge Heaton had earlier addressed. Doc. no. 58, p. 4. Noting that the stay was requested for the purpose of determining a jurisdictional issue, the undersigned stayed the case pending a decision in Salzer. Doc. no. 61, p.2. On August 6, 2014, Salzer v. SSM Health Care of Oklahoma, Inc., 2014 WL 3844011 (10th Cir. 2014), was published. Mandate issued on August 28, 2014. Salzer answers the ERISA preemption issue raised in that case – a case which, as will be seen, is extremely similar to this case. Salzer held that five of the six claims alleged in that case (five claims very similar to the claims alleged in this case) were not preempted, but that the sixth claim (a tortious interference with contract claim, without an equivalent claim in this case) mandated complete preemption. *Id*. at *6. Although the Tenth Circuit concluded that most of Salzer's claims were not preempted, federal jurisdiction over any one claim is sufficient to support removal. *Id*. Therefore, the Tenth Circuit held that the federal court had subject matter jurisdiction in Salzer and that removal was warranted. *Id*. In arriving at that conclusion, Salzer acknowledged and rejected an important part of Judge Heaton's reasoning employed in his order denying remand in *this* case. *Id*. at *4.

Plaintiff filed notice of the Salzer decision and asked the court to remand, arguing that the only claims alleged in this action are claims of the type rejected in Salzer as a basis for preemption. The court construed plaintiff's notice as a motion to remand and established a briefing schedule.

## II. Discussion

The issue is whether, under <u>Salzer</u>, plaintiff's renewed motion for remand should be granted for lack of subject matter jurisdiction, in effect vacating Judge Heaton's earlier order denying remand.

### A. General Considerations

Removal statutes are strictly construed, with all doubts resolved against removal. <u>Fajen v. Foundation Reserve Insurance Company, Inc.</u>, 683 F.2d 331, 333 (10th Cir. 1982). The propriety of removal is judged on the complaint as it stands at the time of the removal. <u>Salzer</u>, 2014 WL 3844011 at *1, citing <u>Pfeiffer v. Hartford Fire Ins. Co.</u>, 929 F.2d 1484, 1488 (10th Cir. 1991). Accordingly, the claims relevant here are those set out in Cates's First Amended Petition, the version of the complaint attached to the Notice of Removal. Doc. no. 1-2.

For several reasons (which are addressed in more detail in the balance of this section), defendant has an uphill climb in its attempt to show that the result in <u>Salzer</u> with respect to the set of claims which overlap with the types of claims alleged in this case, should not predict the result here. First, the claims alleged in the First Amended Petition in this case and the set of five claims which <u>Salzer</u> rejected as the basis of preemption in that case, are extremely similar. The only claim which <u>Salzer</u> found mandated complete preemption under ERISA was a type of claim which is not alleged in this action. That outlier claim is a tortious interference with contract claim, by which plaintiff Salzer alleges that the defendant in that case, SSM Health Care of Oklahoma, Inc., interfered with Salzer's contract for health insurance. Second, given the similarity between the first five claims discussed in <u>Salzer</u> and the claims in this action, the same analytical framework (the <u>Davila</u> framework) applies in both cases. Third, the Tenth Circuit addressed *this very case* in <u>Salzer</u>, rejecting an important part of Judge Heaton's rationale for denying remand, and stating as follows.

-3-

>   We acknowledge that another decision from the Western District of Oklahoma concluded that an ERISA plan beneficiary's suit against a health care provider for failing to submit claims according to the terms of a provider agreement was preempted because her "status as a third-party beneficiary is dependent on her participation in the ERISA Plan in the first place." Cates v. Integris Health, Inc., No. CIV–12–0763–HE, 2012 WL 5456093, at *3 (W.D.Okla. Nov. 7, 2012) (unpublished). But we find this connection too attenuated to meet the Davila standard. See David P. Coldesina, 407 F.3d at 1138 (ERISA preemption does not apply if plan is merely "part of the factual backdrop of th[e] case").

Salzer, at *4.

      B.  Similarity of the Claims Alleged in this Case and in Salzer.

Cates's First Amended Petition alleges claims on her own behalf and as representative of a proposed class consisting of residents of Oklahoma "who received covered medical care or treatment at Defendant's facilities as the result of injuries for which a third party was potentially responsible, and who were insured through a health insurance company that maintained a Provider or Participation Agreement with Defendant, but Defendant collected a payment from, or brought a collection action against, or asserted a lien against a patient for a covered charge, other than a co-payment, deductible, or co-insurance." Doc. no. 1-2, ¶ 4.

The First Amended Petition alleges that Cates received medical care at defendant's facilities for injuries sustained in an auto collision which was not plaintiff's fault; that defendant Integris Health, Inc. had executed a contract with plaintiff's health insurance company (the Participating Hospital Agreement, also referred to as a provider agreement), which required defendant to submit covered charges to plaintiff's insurance company and accept discounted payment for those charges from the health insurance company; and that although the Participating Hospital Agreement (or provider agreement) prohibited defendant from seeking

payment for a covered charge from plaintiff other than a co-payment, deductible, or co-insurance, defendant nevertheless sought the non-discounted amount directly from plaintiff by filing and asserting a lien against plaintiff for a covered charge other than a co-payment, deductible, or co-insurance.  *See*, doc. no. 1-2, ¶¶ 12 - 19 (factual allegations).

On these underlying facts, the First Amended Petition alleges claims for breach of contract, for violation of the Oklahoma Consumer Protection Act, for deceit, and seeks specific performance of a contract (referring to the Participating Hospital Agreement, *i.e.* the provider agreement, between defendant Integris and plaintiff's health insurance carrier First Health Network, to which Cates alleges she is a third party beneficiary).  The First Amended Petition includes claims seeking declaratory and injunctive relief, and seeks punitive damages.  Doc. no. 1-2.

The above claims are very similar to the claims described by the Tenth Circuit in Salzer.

> Salzer received medical care at an SSM facility for injuries he sustained in an accident. At the time of his treatment, he possessed a health insurance plan (the "Plan"). ...
>
> SSM had an existing contract with Salzer's health insurance company (the "Provider Agreement") which required SSM to submit covered medical charges to Salzer's insurance company and accept discounted payment from the insurer. Although the Provider Agreement prohibited SSM from seeking payment for a covered charge from Salzer, SSM sought the non-discounted amount directly from him.
>
> Salzer filed suit against SSM in Oklahoma state court for breach of contact, violation of the Oklahoma Consumer Protection Act, deceit, and tortious interference with contract.  He proposed to represent a putative class of certain Oklahoma residents
>
>> who received covered medical care or treatment at the "Defendant's Facilities" as the result of injuries for which

>a third party was potentially responsible, and who were insured through a health insurance company that maintained a Provider or Participation Agreement with the Defendant, but the Defendant collected a payment from, or brought a collection action against, or asserted a lien against a patient for a covered charge, other than a co-payment, deductible, or co-insurance.
>
>In addition to damages, Salzer sought, on behalf of himself and the putative class, "specific performance of a contract to which plaintiff is a third party beneficiary" (referring to the Provider Agreement).

Salzer, at *1.

Thus, these two actions are based on extremely similar factual allegations which, in large measure, support the same theories of liability. The most material difference is that the complaint in Salzer includes a tortious interference with contract claim, whereas Cates's complaint does not. This difference is critical because, as already noted, the tortious interference claim is the only claim which provided federal jurisdiction in Salzer. Salzer at **4-6.

### C. The Davila Framework

To determine whether a claim falls within ERISA's civil enforcement provision and therefore causes preemption, Salzer applied the two-part test set forth in Aetna Health Inc. v. Davila, 542 U.S. 200 (2004). Salzer at *2. Under Davila, preemption occurs: 1) if an individual, at some point in time, could have brought his claim under ERISA §502(a)(1)(B); and 2) if there is no other independent legal duty that is implicated by a defendant's actions. *See, id.* at *2 (quoting Davila).

The first prong of the Davila test requires that the claim in question assert rights to which the plaintiff is entitled "*only* because of the *terms of an ERISA regulated employee benefit plan.*" Salzer at *3, quoting Davila at 210, emphasis in Salzer. The Tenth Circuit found that Salzer's claims for breach of contract, violation of the

Oklahoma Consumer Protection Act, deceit, specific performance, and punitive damages (the set of five claims), are not claims which asserted that benefits were due under Salzer's plan, and were not claims by which Salzer sought to enforce or clarify rights under the plan. Salzer at *3. Instead, the Tenth Circuit found that in these claims Salzer complained that defendant SSM Health Care of Oklahoma, Inc. did not fulfill its obligation to submit charges for plaintiff's care to the insurer but, instead, billed Salzer directly. Id. As Salzer states, "The contracts under which these claims arise are the Provider Agreement and the Hospital Services Agreement,[1] not the Plan." Id. Accordingly, Salzer held that the first five claims under discussion failed the first prong of Davila. "We conclude that five of Salzer's six original claims do not fall under ERISA § 502(a)(1)(B) because they do not seek to vindicate rights set forth in the 'terms of the plan,' as required by that provision." Id. at *3.

Like the set of five claims discussed first in Salzer, none of the claims alleged in Cates's First Amended Petition seek any benefits from Cates's heath insurer, nor is Cates seeking to enforce or clarify rights under her health plan. Rather, all of Cates's claims allege that defendant did not fulfill its obligations under the Participating Hospital Agreement (the provider agreement) regarding the manner in which defendant could submit and collect charges.[2] In these circumstances, any

---

[1]The Hospital Services Agreement was allegedly an agreement presented to Salzer by the defendant when he received services, authorizing the defendant to disclose medical information for billing purposes and authorizing Salzer's health insurance company to pay. The record in this case also includes documents presented by defendant to Cates, and signed by Cates, when she received services. *See*, Conditions for Admission forms, doc. no. 49-3, exhibits C, F.

[2]For example, Cates alleges that defendant failed to submit the medical bills to the insurance company for payment of discounted prices but instead sought an amount in excess of the discount amount directly from the class member, doc. no. 1-2, ¶ 8.a.; that instead of submitting its bills to plaintiff's insurance carrier as required by the provider agreement, defendant filed a lien upon the plaintiff, *id*. at ¶ 17; that defendant breached the provider agreement by failing to submit each class member's medical bills so that the class members could receive an in-network discount for said bills
(continued...)

discounted payment that plaintiff might allegedly be entitled to is dependent on defendant timely submitting the medical bills in question, as required under the provider agreement. As in Salzer, the first prong of Davila is not met.

For preemption to arise, the second prong of Davila requires that there must be no separate and independent legal basis for the claim in question. Salzer found that this prong, like the first, was not satisfied, quoting various authorities including Cargill v. Norman Reg'l Health Sys. and/or Norman Reg'l Hosp. Auth., an order by Judge Robin Cauthron in CIV-12-0180-C. Cargill, as reviewed in Salzer, correctly rejected preemption arguments where the plan played "only a tangential role" in the claim, and where plaintiff's claims "primarily hinge[d]" on an agreement which plaintiff claimed she was forced to sign to obtain medical services, and on Oklahoma law. Salzer, *id*. at *4, quoting Cargill.

The same is true with respect to Cates's claims. All of these claims primarily hinge on the Hospital Participation Agreement (the provider agreement), and Oklahoma laws regarding the parties' duties and obligations under that agreement and under Oklahoma contract law generally, as well the parties' duties and obligations under the Oklahoma Consumer Protection Act, under the Oklahoma law of deceit, and under state law pertaining to the recovery of punitive damages. Thus, as in Salzer, an independent legal duty (independent of ERISA) is implicated by defendant's alleged actions with respect to each of the claims alleged in Cates's First Amended Complaint, leaving the second prong of Davila unsatisfied. As the Tenth Circuit explained in Salzer, this is the result (with respect to the first five claims addressed in that decision) even though the plan "may be consulted in the course of litigating a state-law claim,"

---

[2](...continued)
and defendant instead filed a lien or sought payment directly from each class member for the full amount of the bills, *id*. at ¶ 25; and that defendant failed to timely submit each class member's medical bills to their health insurance company as required by the provider agreement, *id*. at ¶ 29.

even though the claim "may be related to the Plan in some way," and even though Cates's status as a third-party beneficiary of the provider agreement depends on her participation in the ERISA plan "in the first place." *See*, Salzer at *4 (quoting various authorities, and criticizing Judge Heaton's language).

### D.  The Tenth Circuit's Criticism of Judge Heaton's Earlier Order Denying Remand.

Furthermore, as just noted, it is in this part of the Salzer decision (addressing the second prong of Davila) that the Tenth Circuit rejected an important part of Judge Heaton's reasoning when he denied remand at an earlier stage of this case. As pointed out in Salzer, Judge Heaton ruled that because Cates's status as an alleged third-party beneficiary of the Hospital Participation Agreement was dependent on her participation in the ERISA Plan "in the first place," the second prong of Davila was satisfied. Judge Heaton's order at doc. no. 29, p. 7. Salzer states that "we find this connection [to the plan] too attenuated to meet the Davila standard." Salzer at *4. "We conclude Cargill's reasoning is the more persuasive, and that a substantively similar analysis applies to the case at bar." *Id*. Cargill, as this order has already observed, found that ERISA preemption did not apply where plaintiff's claims primarily hinged upon an agreement which plaintiff claimed she was forced to sign to obtain medical care, and upon whether or not that agreement violated Oklahoma contract law or other provisions of Oklahoma law. *Id*., quoting Cargill.

### E.  Defendant's Arguments for Avoiding the Result Predicted by Salzer

Based on the above analysis, the claims alleged in Cates's First Amended Petition pass neither part of the two-part test for ERISA preemption. Defendant makes several arguments attempting to avoid this result. This order briefly addresses the most prominent of the arguments by which defendant seeks to distinguish Salzer.

Defendant argues that reliance on the absence from this case of the tortious interference with contract claim is misplaced. Defendant argues that plaintiff cannot rely on how a claim is styled, and that the apparent overlap (between the claims which <u>Salzer</u> held did not create preemption, and the claims alleged in this case) is not dispositive. Doc. no. 70, p. 11. This court's conclusions do not depend on the manner in which any claims are styled in either complaint. The court has looked at the substance of all claims. Having done so, it is clear that the tortious interference claim which mandated preemption in <u>Salzer</u> is unlike any of the other five claims in that case, in the same way that it is unlike any of the claims alleged in this action. The tortious interference claim differs because it primarily hinges on the plaintiff's health insurance agreement rather than on the provider agreement.

Next, defendant argues that <u>Salzer</u> does not control because the claims which <u>Salzer</u> found were not preempted were not shown by the record in that case to be clearly dependent upon plaintiff's employee benefit plan. Doc. no. 70, pp. 11-12. Defendant argues that the more complete record in this case shows that all of Cates's claims depend on a determination of what are "covered" services under the plan. Defendant argues that <u>Salzer</u> did not, and could not, address that issue head-on because the relevant agreements were not in the record. *See*, <u>Salzer</u> at *4 and n.4. (observing that certain documents were not in the record).

Any confusion caused by the absence from the record of the actual agreements at issue in <u>Salzer</u> is not determinative here. For one thing, the Participating Hospital Agreement (the provider agreement), which is in the record in this case, defines "covered services." *See*, doc. no. 28-1 §1.2 of the Participating Hospital Agreement.[3]

---

[3]The Participating Hospital Agreement, Section 1 (Definitions), paragraph 1.2, provides as follows. "**Covered Services.** All of the health care services and supplies: (a) that are Medically Necessary; (b) that are generally available at Hospital; (c) that Hospital is licensed to provide to
(continued...)

Furthermore, the fact that this definition refers to services covered under the terms of the applicable member contract is not dispositive. For example, immediately after the Tenth Circuit observed that certain documents were missing from the record in Salzer, it noted its agreement with the Ninth Circuit's determination "that references to 'covered billed charges' in a provider agreement do not establish that a claim for breach of a provider agreement is completely preempted." Salzer at *4, citing Blue Cross of Cal. v. Anesthesia Care Assoc. Med. Grp., Inc., 187 F.3d 1045, 1051 (9th Cir. 1999). Salzer is a published decision and it expressly gives guidance specific to *this* case. The state of the record in Salzer is not the linchpin of that decision.

Defendant argues that Salzer's rejection of Judge Heaton's reasoning is not dispositive because the rejected reasoning was not the sole basis of Judge Heaton's conclusion that there was preemption. Judge Heaton's rejected reasoning was, however, the basis for his conclusion that the second part of the Davila test was satisfied. Moreover, the Tenth Circuit's express rejection of even a portion of Judge Heaton's reasoning is, at the least, an eye-catching caution flag concerning any lingering arguments in favor of federal subject matter jurisdiction in this case.

Defendant argues that Cates's First Amended Petition includes references to an "in-network discount." *See*, doc. no. 1-2, ¶¶ 25 and ¶ 27. Read as a whole, however, the allegations make clear that Cates's claims primarily hinge on the provider agreement, not the plan.

Defendant also argues that Cates's claim for declaratory relief, and the tortious interference with contract claim alleged by Salzer which the Tenth Circuit found mandated complete preemption, are "functionally...indistinct," doc. no. 73, p. 3, and that the declaratory relief claim "substitutes for the tortious interference claim...."

---

³(...continued)
Members; and (d) that are covered under the terms of the applicable Member Contract."

Doc. no. 75, p.3. The court disagrees. The declaratory relief request in Cates's First Amended Petition seeks relief based on defendant's alleged conduct in violation of the terms of the Hospital Participation Agreement (provider agreement). This claim never mentions interference with Cates's health insurance contract with a third party insurance company. By contrast, the tortious interference claim in Salzer alleges interference with plaintiff's contract for health insurance.

Finally, defendant continues to make the over-arching argument that the logic by which the Tenth Circuit concluded the tortious interference claim was preempted in Salzer, applies to Cates's claims here. Defendant argues "it is plain from the provider agreement and plan document included in the record in this case that [defendant's] performance of its alleged duties with respect to 'covered' charges depends inextricably upon, and requires interpretation of, Plaintiff's employee benefit plan." Doc. no. 70, p. 2. Simply put, this argument is foreclosed by Salzer, which concludes that these types of claims, predicated on very similar factual allegations, do not give rise to preemption jurisdiction.

### III. Conclusion

This case was stayed to permit the Tenth Circuit to decide the jurisdictional issue raised in Salzer. Salzer has now determined that claims extremely similar to all of the claims alleged in this action are not preempted by ERISA. Moreover, Salzer rejects an important part of Judge Heaton's reasoning at a previous stage of this very case. The court concludes that ERISA does not preempt any of the state law claims alleged in the First Amended Petition, leaving the court without subject matter jurisdiction. Title 28 U.S.C. § 1447(c) provides that "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Accordingly, plaintiff's renewed motion to remand is

**GRANTED**. Doc. no. 68. This action is hereby **REMANDED** to the District Court of Oklahoma County, State of Oklahoma, under 28 U.S.C. § 1447(c).

Dated this 30th day of September, 2014.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

12-0763p013.wpd